NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MASON AND HANGER–SILAS MASON
CO., INC., the RUST ENGINEERING
CO., a Joint Venture d/b/a Mason-Rust,
Respondent.

No. 20296.

United States Court of Appeals,
Eighth Circuit.

Oct. 12, 1971.

Marjorie S. Gofreed, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Atty., N. L. R. B., for petitioner.

Thomas M. Hanna, St. Louis, Mo., for respondent; McMahon & Berger, St. Louis, Mo., of counsel.

Before MEHAFFY and HEANEY, Circuit Judges, and MEREDITH, District Judge.

PER CURIAM.

The National Labor Relations Board petitions this Court for enforcement of its order against Mason-Rust. The

Board's decision and order are reported at 179 N.L.R.B. No. 71, 72 LRRM 1372 (1969). We refuse to enforce.

Mason-Rust was engaged in the renovation of the "Gateway" ammunition plant in St. Louis, Missouri, for the United States Government. In early 1968, it employed about 700 employees, including 70 carpenters. With the exception of 43 black laborers, four teamsters and two pipefitters, all of its employees were white.

On February 1, 1968, George Newsom and Doyal Criswell, both black members of the Carpenters' Union, discussed seeking employment with Mason-Rust.

The next day, Newsom telephoned Mason-Rust's personnel manager, Milton Hill, to inquire about going to work for Mason-Rust. He was referred to the carpenter foreman.

Thereafter, Newsom went to the job site and talked with Hill. Hill again told Newsom that the union was responsible for the hiring. Newsom then spoke to the president of the Carpenters' Union, who told him that the company did the hiring from a list maintained by union stewards.

On Friday, March 8, Newsom and Criswell went to Mason-Rust's personnel office and saw Hill. Newsom told Hill that the union officers had advised him that the union did not do the hiring. He demanded to be placed on the job as there were no other black carpenters on the job. He pounded the desk and shouted to emphasize his demand. Hill asked Newsom and Criswell if they were union members. Both men showed him their union cards. Hill then instructed the two men to see the carpenter foreman at the gate the next morning at 6:30.

The men did not report the next morning, a Saturday, but did report the following Monday. When they arrived at 7:00 A.M., however, the carpenter foreman had gone to work inside the gate. Criswell left for his job, but Newsom again went to see Hill. Hill refused to call the foreman saying it would be difficult to reach him. Newsom became upset and threatened to picket the plant. He stated he had picketed other places, some of them because of racial discrimination.

Hill denied that Mason-Rust practiced discrimination, and told Newsom to see the carpenter foreman the next day.

Newsom and Criswell were at the plant gate at 6:00 the following morning and met with the foreman. He told them there was a waiting list of 150 job applicants. Newsom replied that the job was a government one, and that no black carpenters had been hired. The foreman replied that the hiring was done at the office.

Newsom then went to see Hill and told him he was being given the runaround. Hill replied that he would have to keep going to the gate each morning to see the foreman. Newsom then stated that he was going to see the government. Newsom returned to see Hill a few days later. Hill said he was busy, and asked Newsom if he had seen the foreman. Newsom again stated he was going to take the matter up with the government.

Newsom then talked with someone in the Corps of Engineers' office at the project. He was given the name of the project manager, Joseph Higgins. Newsom called Higgins and told him his story. Higgins told Newsom that the union did the hiring. Newsom replied that he would have to pursue the matter with the government.

Newsom then called Mason-Rust's home office in Pittsburgh, and related his story. The official who answered told Newsom to contact Higgins again.

On April 2, Newsom met with Higgins and Hill. He told them that he was a charter Negro member of the Carpenters' Local, that he had been conducting an uphill fight to gain employment for blacks in the St. Louis area, and that he wanted to work at the project. Higgins told Newsom to fill out an application, but added that Mason-Rust had laid off 18 carpenters the day before. Newsom replied that Mason-Rust should lay off a

white man to make room for him. Newsom stated that he would picket, if necessary, to get the job.

Newsom returned to the plant several times, but never obtained a job. A number of carpenters had been hired between February 1 and April 2, 1968.

After the April 2 meeting, Higgins called the union and asked that some black carpenters be sent to the job. He told Hill to hire minority group personnel in every job classification if possible. He did not direct that Newsom be hired, however. He explained at the hearing that Newsom had acted in an abusive manner towards Hill, the Corps of Engineers and himself; and that, as a result, he had concluded that Newsom was emotionally unstable and would not make an ideal employee.

Two black carpenters were subsequently hired—the first, a member of the union, and the second, a nonmember recommended by the first.

Newsom filed an unfair labor practice charge with the National Labor Relations Board on May 2, 1968. The Regional Director subsequently issued a complaint against Mason-Rust. The complaint was amended on October 23, 1968, to charge that Mason-Rust had also discriminated against Criswell.

The Board found that Mason-Rust had violated § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., in denying employment to Newsom and Criswell because of their engagement in protected concerted activities. It required Mason-Rust to grant relief and to post notices.

Mason-Rust contends on appeal that neither Newsom nor Criswell were employees within § 2(3) of the Act, that the Board's finding that Criswell was discriminated against was based upon incidents occurring more than six months before the filing of an appropriate charge as required by § 10(b) of the Act, that neither Newsom nor Criswell was engaged in protected concerted ac-tivity within the meaning of the Act, and that the failure of Mason-Rust to employ Newsom or Criswell was unrelated to any concerted protected activity.

▉▉ We find no merit in Mason-Rust's contention that neither Newsom nor Criswell were employees within the meaning of the Act. See, Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Reliance Insurance Companies v. N. L. R. B., 415 F.2d 1, 6 (8th Cir. 1969). Nor do we find merit in the contention that the charge, as it related to Criswell, was barred by the six-month statute of limitation. See, N. L. R. B. v. Hotel Conquistador, Inc., 398 F.2d 430, 433 (9th Cir. 1968); National Labor Relations Board v. Dinion Coil Co., 201 F.2d 484, 491 (2nd Cir. 1952).

▉ We consider it unnecessary to decide whether Newsom and Criswell were engaged in concerted activities because we hold that, even if they were, the Board had failed to establish, by substantial evidence in the record as a whole, that Mason-Rust failed to hire them because of such activities.

An employer has a right to hire at will so long as such action is not based on opposition to legitimate union activity. N. L. R. B. v. Century Broadcasting Corporation, 419 F.2d 771, 778 (8th Cir. 1969). An inference that a failure to hire an employee was due to his union activity must be based upon evidence, direct or circumstantial, and not on mere suspicion. The burden of proving an improper motive for failure to hire is upon the Board. Singer Company, Wood Products Division v. N. L. R. B., 371 F.2d 623, 624 (8th Cir. 1967). Mason-Rust witnesses testified that their reason for not hiring Newsom was that he missed appointments and used abusive language towards Mason-Rust supervisors on a number of occasions. This conduct led Mason-Rust officials to believe that Newsom was emotionally unstable and less than a satisfactory employee.

In the face of this largely uncontradicted testimony, we do not believe that the Board was justified in finding that Newsom was denied employment because of his concerted activities.

We also find that there is no substantial evidence on the record as a whole to support the Board's finding that Mason-Rust failed to employ Criswell because of his activities. Little or no evidence was produced by the General Counsel inferring that Mason-Rust failed to hire Criswell because of the role he played in bringing the problem of employment of black carpenters to a head. Indeed, there is not even a showing that Criswell was available for work on the date of the alleged unfair labor practices. The Board acted at best on mere suspicions.

Enforcement will be denied.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent.

Newsom and Criswell had the right, under § 7 of the National Labor Relations Act, 29 U.S.C. § 151 et seq., to engage in concerted activities for the purpose of inducing Mason-Rust to employ blacks as carpenters. N. L. R. B. v. Tanner Motor Livery, Ltd., 349 F.2d 1 (9th Cir. 1965), on second appeal, 419 F.2d 216 (9th Cir. 1970); United Packinghouse, Food & Allied Workers Int. Union v. N. L. R. B., 135 U.S.App.D.C. 111, 416 F.2d 1126, cert. denied, Farmers' Cooperative Compress v. United Packinghouse, Food and Allied Workers Int. Union, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969). This right, under the circumstances of this case, was not limited by § 9 of the Act. There is no evidence that Mason-Rust and the union had any agreement permitting the union to take part in the hiring process. Absent such an agreement, Mason-Rust must be held to have had the final responsibility to hire. See, § 8(f) of the Act.

There was substantial evidence to support the Board's finding that Newsom and Criswell were not hired because of their efforts to gain employment with Mason-Rust. Newsom, with some help from Criswell, vigorously pressed his demand that Mason-Rust employ black carpenters. Initially, they were given the "runaround" by Mason-Rust and the union, with each attempting to fix the responsibility for hiring on the other. They pressed their demands so vigorously, however, that Mason-Rust eventually decided to hire some black carpenters. Instead of hiring Newsom and Criswell, however, it hired two other blacks who had not participated in the effort to require Mason-Rust to employ black carpenters. On the basis of these facts, the Board was clearly correct in requiring Mason-Rust to justify its failure to hire Newsom and Criswell, and in finding that Mason-Rust had failed to sustain this burden. The inference drawn by the Board that Mason-Rust's failure to hire Newsom and Criswell was because of their concerted activities was appropriate. See, Mead and Mount Construction Co. v. N. L. R. B., 411 F.2d 1154 (8th Cir. 1969). The record does indicate that Newsom was loud and perhaps even abusive on occasion; but this conduct occurred only after it was apparent that both Mason-Rust and the union were doing their best to avoid the employment of blacks as carpenters. Furthermore, the record shows that Criswell was a model of decorum, was qualified and was a member of the union, yet he too was not hired.

I would grant enforcement.